```
     k9a2JohC kjc

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          15 Cr. 95 (AJN)

 5   SHAQUILLE JOHN,

 6              Defendant.

 7   ------------------------------x       Teleconference

 8                                          Violation of
                                            Supervised Release
 9
                                            September 10, 2020
10                                          11:10 a.m.

11
     Before:
12
                         HON. ALISON J. NATHAN,
13
                                            District Judge
14

15

16
                               APPEARANCES
17
     AUDREY STRAUSS
18        Acting United States Attorney for
          the Southern District of New York
19   BY:  ALLISON C. NICHOLS
          Assistant United States Attorney
20

21   STEVEN L. BROUNSTEIN
          Attorney for Defendant
22

23

24   Also Present:

25   Lauren Blackford, USPO SDNY
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

k9a2JohC kjc

1              (Case called)
2              THE DEPUTY CLERK:  This is a reminder that this is a
3     public proceeding.  Members of the public and press are able to
4     access the proceeding through a public dial-in number.  All
5     participants are reminded that any recording and rebroadcasting
6     of this proceeding is strictly prohibited.
7              Counsel, please state your name for the record,
8     starting with the government.
9              MS. NICHOLS:  Allison Nichols for the government.
10    Good morning, your Honor.
11             THE COURT:  Good morning, Ms. Nichols.
12             And for the defendant.
13             MR. BROUNSTEIN:  Steven Brounstein for Mr. John.  Good
14    morning, as well.
15             THE COURT:  Good morning, Mr. Brounstein; and good
16    morning, Mr. John.  Can you hear me okay?
17             THE DEFENDANT:  Good morning, Ms. Nathan.  Good
18    morning, your Honor.  Sorry about that.
19             THE COURT:  Good morning. That's okay.  Can you hear
20    me okay, Mr. John?
21             THE DEFENDANT:  Yes, I could hear you completely fine,
22    Ms. Nathan, Judge, your Honor.  Sorry about that again.
23             THE COURT:  That's fine.  No worry.
24             And we have Probation Officer Blackford on the line?
25             THE PROBATION OFFICER:  Yes.  Good morning, your

1  Honor.

2  THE COURT:  Good morning, Ms. Blackford.  Thank you.

3  And we have the court reporter on the line, as well?

4  THE COURT REPORTER:  Yes.  Good morning, Judge.  This

5  is Kristen Carannante.

6  THE COURT:  Thank you, Kristen.  Good morning to you,

7  as well.

8  All right.  We are here for a status conference in

9  this matter regarding allegations of violations of supervised

10  release.  As a preliminary matter, we are still dealing with

11  the COVID-19 pandemic.  I am conducting this proceeding

12  remotely pursuant to the authority provided by Section 15002 of

13  the CARES Act and the standing orders issued by our chief judge

14  pursuant to that act.

15  I am proceeding by telephone conference, and Mr. John

16  has confirmed that he is able to hear me.

17  Mr. John, if at any point during the proceeding you

18  have difficulty hearing anyone or if you would like to speak

19  privately to your counsel, just let me know and we will address

20  that before proceeding any further.  Okay?

21  THE DEFENDANT:  Can I may I have a word with my

22  counsel, please?

23  THE COURT:  Sure.  All right.  So we need to -- let me

24  ask Ms. Williams, are you able to move Mr. John and

25  Mr. Brounstein into a private audio room?

1           THE DEPUTY CLERK: No, Judge.
2           THE COURT: So you can do that on the website
3  interface if you have got the numbers of everyone calling.
4           (Pause)
5           THE COURT: If we can't ready do that, I will ask
6  Mr. Brounstein -- we can, but we will have to learn how to do
7  that.
8           Mr. Brounstein, I will ask you and Mr. John to hang
9  up, we will pause the proceeding, and you call him separately
10 so that you can speak privately, and then --
11          MR. BROUNSTEIN: Of course, your Honor. Shaquille,
12 can I have your number you are at now?
13          THE DEFENDANT: I'm not sure -- I'm not sure -- I'm
14 not -- honestly, I'm not really sure of the number. It's a new
15 phone.
16          MR. BROUNSTEIN: Oh. Then can you just call me on my
17 mobile phone, and I can pause this, Judge. I'm on my landline.
18          THE COURT: Okay. So, Mr. Brounstein, you will pause
19 and take the call on a separate line.
20          Mr. John, you will hang up from this call and call
21 Mr. Brounstein on his cell phone, and then when you are done
22 speaking to him, you will re-call in to the conference.
23          Mr. John, do you have Mr. Brounstein's cell phone?
24          THE DEFENDANT: Yes, I do, your Honor.
25          THE COURT: All right. So we will pause and wait for

k9a2JohC kjc

1   Mr. Brounstein and Mr. John to return to the call.

2              MR. BROUNSTEIN:  And I will let you know when we are

3   done, your Honor.  Thank you.

4              THE DEFENDANT:  All right.  Thank you.

5              (Recess)

6              MR. BROUNSTEIN:  Hi.  We are through.  Mr. John is

7   calling back in.

8              THE COURT:  Okay.  Thank you, Mr. Brounstein.  We

9   will --

10             MR. BROUNSTEIN:  Thank you, your Honor, for the time.

11             THE COURT:  Of course.

12             (Pause)

13             THE COURT:  Mr. John?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  And we have Mr. Brounstein as well, so we

16  can proceed.

17             So, as indicated, we do have the ability to pause for

18  to you speak privately with defense counsel should you need to

19  at any other point, Mr. John.

20             And, Mr. John, do let me know if you have any trouble

21  hearing anyone on the line.  Okay, sir?

22             THE DEFENDANT:  All right.  No problem, your Honor.

23             THE COURT:  All right.  Mr. Brounstein, I believe that

24  you -- we don't have a signed waiver of physical presence form,

25  but I understand from your letter that you have discussed the

1    issue with Mr. John.  Could you please just recount for the
2    court the ability you had to discuss with Mr. John --
3              MR. BROUNSTEIN:  Absolutely, your Honor.
4              THE COURT:  -- his right and your understanding of his
5    waiver?
6              MR. BROUNSTEIN:  Yes, your Honor.
7              I did speak to Mr. John as late as yesterday,
8    indicating to him that he had a right to be present and do this
9    hearing physically in front of the court but, given the
10   COVID-19 crisis, that doing that would be extremely difficult.
11   I indicated to him that we wanted to proceed via telephone and
12   that he consented to allowing the court and all of us to do
13   that.  He understands what his rights are, and he is willing to
14   waive his physical appearance to conduct this hearing via
15   telephone, as we did in the last one.
16             THE COURT:  All right.  Thank you, Mr. Brounstein.
17             Mr. John, is what Mr. Brounstein indicated correct,
18   sir?
19             THE DEFENDANT:  Yes, your Honor.
20             THE COURT:  Okay.  Thank you.
21             Then, counsel, I am prepared to find that the
22   defendant has knowingly and voluntarily waived his right to
23   appear physically for this proceeding and that we can instead
24   today proceed by phone conference.
25             Ms. Nichols, any objection to that finding?

1                MS. NICHOLS:  No, your Honor.  Thank you.

2                THE COURT:  Mr. Brounstein, any objection?

3                MR. BROUNSTEIN:  No, your Honor.

4                THE COURT:  Additionally, I do conclude that today's

5    proceeding cannot be further delayed without serious harm to

6    the interests of justice, as it is necessary -- we have delayed

7    the proceeding a number of times, and it is necessary to ensure

8    that violation of supervised release cases are moving forward,

9    both so that the court's backlog does not become unmanageable

10   and to ensure for the safety of the community, as well as other

11   interests that these matters are addressed and put on an

12   appropriate schedule for resolution.

13               Ms. Nichols, any objection to that finding?

14               MS. NICHOLS:  No, your Honor.

15               THE COURT:  Mr. Brounstein?

16               MR. BROUNSTEIN:  No, your Honor.

17               THE COURT:  Okay.  With that, Ms. Nichols, may I ask

18   if you would provide a summary and status update as to where we

19   are and, to the extent that you have a proposal for how to

20   proceed, I am happy to hear it.

21               MS. NICHOLS:  Thank you, your Honor.

22               Unfortunately, the status update that I have for the

23   court today indicates that there has been no progress since our

24   last conference a little over one month ago.

25               Just to recap what we had all discussed at the

1   conclusion of that conference and what your Honor had ordered
2   is that Mr. John would report to drug testing as directed by
3   the probation officer, and that he would provide the necessary
4   employment verification, and that he would participate in
5   outpatient drug program as approved by the probation officer.
6          It is my understanding that Mr. John has done none of
7   those things and, in fact, has not been in touch with his
8   probation officer for the entirety of the last 35 days.  And so
9   while I am glad that Mr. John has joined us today for the
10  scheduled conference, it does appear to the government that,
11  for the intervening period, he has as good as absconded from
12  his supervision.
13         And so the way that I thought that we had left things,
14  I thought that the Court's instruction to Mr. John were clear,
15  I thought that Mr. John has received very explicit instructions
16  from Officer Blackford about the need to be in touch and not
17  make her chase him down.  Unfortunately, we did not see any
18  difference in his behavior and amenability to supervision in
19  the intervening period.
20         What I had understood from my conversations with
21  Mr. Brounstein and with Officer Blackford, I mean, I think --
22  you know, everyone will correct me if I have any of this wrong,
23  but I think the three of us are on the same page that we would
24  like to reach a resolution in this matter so that all of us and
25  Mr. John can move forward.

1        It doesn't seem like he is interested in working
2    proactively with the probation office and the resources that
3    they have available and can make available to him in terms of
4    drug treatment and help with employment placement; and, so, in
5    light of that, it does not seem to be an appropriate or
6    effective use of resources to have Officer Blackford continuing
7    to attempt to chase him down.
8        And what I understood from Mr. Brounstein is that, in
9    the intervening months, he and his client would be having
10   productive discussions about whether Mr. John would want to
11   resolve the matter by admitting to one or more of the specified
12   violations in the violation report, and I understand that he
13   hasn't had a chance to have those meaningful conversations,
14   which are important and shouldn't be rushed, by any means.
15   But, unfortunately, it appears that nothing has changed since
16   we were all on a conference in August.
17        And just to be clear, I don't fault Mr. Brounstein for
18   that at all.  He shouldn't have to chase down Mr. John, either.
19   He shouldn't have to call him and not get calls back and call
20   his mother in order to get in touch with him.
21        So from the government's perspective, your Honor, it
22   doesn't feel as though the adjournments are helpful or
23   productive or are resulting in any moving the ball forward at
24   all, and so I think that is something that perhaps additional
25   guidance from the Court might help us see a path forward that's

Case 1:15-cr-00095-AJN   Document 3028   Filed 10/02/20   Page 10 of 16    10
k9a2JohC  kjc

1   more productive.
2           I know that Mr. Brounstein and I talked yesterday
3   about the need to resolve this and the fact that, if Mr. John
4   is not prepared to admit to the specs, we need to have a
5   hearing.  But just to be clear, your Honor, I need more than
6   one day's notice if we are going to have a hearing.  So if we
7   set a date, I think at some point there needs to be clarity as
8   to whether Mr. John is in fact going to admit at the next
9   conference or whether he is not, so that the government can
10  make the necessary disclosures that would have to come in
11  advance of any hearing and that the Court can budget
12  appropriate time and make appropriate determinations about
13  whether that should be held telephonically, by video, or in
14  person.
15          So while I understand that Mr. Brounstein intends to
16  ask for an adjournment and we understand, as I said, the need
17  for that, given that he hasn't had a chance to have these
18  fulsome conversations with his client, the next date -- it
19  can't just be a date that's, like, maybe a hearing and maybe a
20  plea, with no clarity in the intervening weeks about which it
21  would be.
22          So we are not asking for a bench warrant for
23  Mr. John's arrest, although I think, given his noncompliance,
24  that would be appropriate, but in light of the nature of the
25  violations here, the government is take the position that

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

further leniency is appropriate.

But we do think that, at some point, these violations, which have been pending since January, do need to be resolved.

THE COURT:  Thank you, Ms. Nichols.

Go ahead, Mr. Brounstein.

MR. BROUNSTEIN:  Your Honor, I agree with some of what Ms. Nichols said.

One of the reasons why I haven't had that meaningful conversation with my client about resolving this matter is because of the fact of, quite frankly, Judge, of COVID.  I have not -- I have met, in the past six months, I think, with two meetings with clients totally.  I have been extremely cautious about this.  I'm in good health, but I'm not a youngster, and I have kept away from a lot of people to try to remain healthy.

In furtherance of that in trying to resolve this case, I have now scheduled a meeting with Mr. John and his mother in my office tomorrow morning, and I hope to resolve this case.

And I think what we should do, if I can make a recommendation, your Honor, is we set this down for a hearing date, and I will certainly contact the court, the government, and probation about whether we are going to go forward with a hearing or resolve this well before that date, well before that date.  I understand the government needs to prepare and get witnesses and get discovery.

I think that, after I meet personally with Mr. John, I

1    think I can give the Court and everybody else further guidance
2    of where we are going.  I just --
3              (Indiscernible crosstalk)
4              THE COURT:  When is --
5              MR. BROUNSTEIN:  -- am loathe to have somebody plead
6    guilty to anything without me having a personal conversation
7    with him.
8              THE COURT:  When is your meeting with Mr. John?
9              THE DEFENDANT:  Tomorrow, your Honor.
10             THE COURT:  Mr. Brounstein, you are meeting tomorrow?
11             MR. BROUNSTEIN:  That's my intention, your Honor, to
12   meet them in my office tomorrow morning and, again, that's
13   something that I have not been doing.  But given the length of
14   time here, and I think that this matter needs to be resolved,
15   I'm willing to do that.
16             THE COURT:  Let me just pause for a moment.  I heard a
17   beep.  Let me confirm that we have -- Mr. John, are you still
18   on the line?
19             MR. BROUNSTEIN:  Maybe his mother is coming in.
20             THE DEFENDANT:  Yes, I'm still on the line, your
21   Honor.
22             MR. BROUNSTEIN:  I asked his mother to listen to this.
23             THE COURT:  Mr. Brounstein, I do a lot of these.  The
24   phone works --
25             MR. BROUNSTEIN:  Okay.

k9a2JohC kjc

1   THE COURT: -- well during COVID. I'm going to
2   confirm on the record that we have all of our participants.
3   We obviously have Mr. Brounstein. Mr. John indicated
4   he is still here.
5   Ms. Nichols, you are still here?
6   MS. NICHOLS: Yes, your Honor.
7   THE COURT: Thank you.
8   And we still have our court reporter?
9   THE COURT REPORTER: Yes, Judge.
10   THE COURT: Thank you.
11   And Officer Blackford?
12   THE PROBATION OFFICER: Yes, your Honor.
13   THE COURT: Thank you very much.
14   Here is what we are going to do. I am going to
15   require a status letter in two weeks' time. If we are nowhere
16   different than we are now, I am going to set this for a hearing
17   and we will go forward with the hearing in the absence of a
18   plea to the specifications.
19   I think it is clear that to go forward with a hearing
20   will require tremendous resources on everybody's part, so if we
21   are going to put that in place, it is with certainty that that
22   is with everyone's intention to go forward with the hearing.
23   We cannot go on indefinitely the way that we have.
24   Mr. John, I have said this before, but the Court
25   entered a judgment against you which included terms of

1     supervised release.  These are not optional.  The probation
2     officer, I know, is working very hard to work with you, to be
3     flexible, but to make sure that you are in compliance, and you
4     are not.  And failure to comply with the terms that I myself
5     set for your supervised release, if that is the case, proven at
6     a hearing, is subject to punishment.
7              So it is now time to put this case on a clear path and
8     schedule for resolution, and it is time for you to work with
9     Mr. Brounstein and to work with your probation officer.  But we
10    will get to resolution of these allegations one way or the
11    other.  Continued failure to comply between now and then will
12    only make matters worse and could potentially result in the
13    probation department and the government seeking a warrant for
14    your arrest and detention pending resolution of these
15    specifications.  Nobody here wants to do that.  I recognize
16    that there are all kinds of circumstances, including the nature
17    of the allegations as well as the conditions in prison as a
18    result of the COVID pandemic.  Nobody wants to see you
19    incarcerated.  But the court sets orders and sets judgments,
20    and those rules have to be complied with.  So I think we have
21    been patient, we have tried to work through this with
22    adjournments, but it is now time to put this on a different
23    path.
24             Ms. Nichols, reaction to my proposal for a status
25    letter in two weeks indicating if we have made any progress or

|   |   |
|---|---|
| 1 | if the parties are in agreement as to resolution?  In the |
| 2 | absence of that, the Court will set date for a hearing. |
| 3 | MS. NICHOLS:  That makes sense to me.  Thank you, your |
| 4 | Honor. |
| 5 | MR. BROUNSTEIN:  Judge, it makes sense to me as well. |
| 6 | THE COURT:  All right.  So two weeks from today I will |
| 7 | take a joint letter from the parties.  If the indication is |
| 8 | that we are just in the same place, I will look into the |
| 9 | availability of courtrooms for an in-person hearing on the |
| 10 | violations of supervised release and propose dates to the |
| 11 | parties.  It won't be far out.  It will be sometime in this |
| 12 | fall. |
| 13 | And in the meantime, Mr. John, I think I have been |
| 14 | clear, I know I have been clear, you have got to work with |
| 15 | Mr. Brounstein and you have got to work with Probation Officer |
| 16 | Blackford.  Okay, sir? |
| 17 | THE DEFENDANT:  Yes, your Honor.  I'm -- your Honor, |
| 18 | I'm -- tomorrow I'm really gonna sit down with Steve and really |
| 19 | let Steve know what's going on with me, as he mentioned it, so |
| 20 | we, like, all -- |
| 21 | THE COURT:  All right. |
| 22 | THE DEFENDANT:  -- know -- you understand what I'm |
| 23 | saying, your Honor?  I'm really sorry if I haven't been -- |
| 24 | always look shabby in your eyes, too. |
| 25 | THE COURT:  Okay.  I hear you, Mr. John.  That is why |

k9a2JohC    kjc

Mr. Brounstein is looking out for your interest.  Probation Officer Blackford wants to make this work for you and be helpful to you.  I do, the government does, so we are on the same page here.  We need you to take these steps and work with Mr. Brounstein.

          With that, Ms. Nichols, anything further?

          MS. NICHOLS:  No.  Thank you, your Honor.

          THE COURT:  Mr. Brounstein?

          MR. BROUNSTEIN:  Nothing, your Honor.  Everybody stay healthy, please.

          THE COURT:  You, too.  Thanks everyone.  We are adjourned.

          THE DEFENDANT:  All right.  Thank you, your Honor.

          - - -